**SO ORDERED.**

**SIGNED this 04 day of April, 2008.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line and print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **CHRISTINE ANN CHAMPAGNE,** | **CASE NO. 07-10913** |
| **DEBTOR.** | **CHAPTER 7** |

**MEMORANDUM OPINION GRANTING MOTION TO DISMISS OR CONVERT
BECAUSE DEBTOR'S STUDENT LOAN PAYMENTS MAY NOT BE DEDUCTED
FROM CURRENT MONTHLY INCOME
AS A SPECIAL CIRCUMSTANCE UNDER 11 U.S.C. § 707(b)(2)(B)(i)**

The matter before the Court is the United States Trustee's Motion to Dismiss or Convert Pursuant to 11 U.S.C. § 707(b).[1] The United States Trustee for the District of Kansas, Richard A. Wieland (hereafter "UST"), appears by William F. Schantz. The Debtor, Christine Ann

---

[1] Doc. 13.

Champagne, appears by Michael J. Studtmann. There are no other appearances. The Court has jurisdiction.[2]

The UST moves to dismiss this Chapter 7 case pursuant to § 707(b)(1), alleging that Debtor's debts are primarily consumer debts and the granting of relief would be an abuse of the provisions of Chapter 7. Dismissal is premised upon both presumed abuse under § 707(b)(2)[3] and the totality of the circumstances under § 707(b)(3). The parties agree the UST's motion to dismiss for presumed abuse should be granted unless Debtor's ongoing student loan payments constitute special circumstances pursuant to § 707(b)(2)(B)(i) sufficient to rebut the presumption of abuse. To facilitate resolution of the motion, the Court has taken this issue under advisement. Additional issues relevant to the motion to dismiss or convert are not before the Court. As examined below, the Court concludes that student loan expense is not per se a special circumstance which justifies additional expenses, and the presumption of abuse stands. Therefore, this case must be dismissed, unless the Debtor converts to a Chapter 13 within 30 days of this order.

**FINDINGS OF FACT.**

The parties have stipulated to the following facts. Debtor filed for relief under Chapter 7 on April 24, 2007. Form 22A, the Chapter 7 Statement of Current Monthly Income and Means-

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion to dismiss is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[3] Since filing for initial schedules and forms, Debtor has amended her Form 22A, mooting several allegations of the UST's motion based upon presumed abuse.

Test Calculations, to be completed by all debtors who debts are primarily consumer debts, was filed with her petition.

The UST filed the motion to dismiss or convert premised upon alleged abuse of Chapter 7 on June 28, 2007, and Debtor filed an amended Form 22A[4] on the same day. Amended Form 22A establishes that Debtor is an above median income debtor, with $257.09 monthly disposable income. The Stipulation provides that "Debtor's non-priority unsecured claims amount to no more than $26,300."[5] Schedule F, creditors holding unsecured nonpriority claims, includes $25,100 for two student loans. If debtor is allowed to deduct the student loan payments, her disposable monthly income would be $91.09.

Debtor's student loans were not at the time of filing her petition, or at the time of filing the stipulation, qualified for any deferment or consolidation program.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. Issue Presented and Positions of the Parties.**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) materially amended § 707(b) to provide new and detailed provisions for the dismissal of Chapter 7 cases. Section 707(b)(2) creates a bright line test applicable to above median income debtors with primarily consumer debt to determine if the Chapter7 filing is presumed abusive for purposes of § 707(b). Such debtors use form B22 to perform calculations of allowed monthly

---

[4] The UST has not objected to the figures provided on the amended Form 22A, with the exception of the inclusion of the payment to Debtor's student loan lenders as a special circumstance.

[5] Doc. 30. Schedule F lists unsecured nonpriority claims in the amount of $72,405. It appears to the Court that the word "no" was erroneously inserted in the stipulation, which should read "Debtor's nonpriority unsecured claims amounts to more than $26,300." However, this apparent error is of no consequence in this case.

3

expenses and deduct them from current monthly income, as defined by the Code. If the monthly disposable income remaining after the deduction of allowed expenses, multiplied by 60 is not less than the lesser of (1) $6,575 or 25% of the debtor's nonpriority unsecured debts, whichever is greater, or (2) $10,950, then the case is presumed to be abusive. However, the presumption of abuse may be rebutted by the debtor showing special circumstances that justify additional expenses or a reduction of income when applying the abuse test, thereby reducing the monthly income below the foregoing standard for abuse. Thus, the special circumstance adjustment allows the courts to "temper the arbitrariness of the means test numbers."[6]

In this case, the parties agree that Debtor's filing is presumed abusive under §707(b)(2)(A)(i). Debtor's monthly disposable income, after the deduction of all allowed expenses, is $257.09. Sixty times this income is $15,425. The Stipulation provides "Debtor's non-priority unsecured claims amount to no more than $26,300."[7] The filing is therefore presumed abusive under the test of § 707(b)(2)(A)(i) because $15,425 is not less than the lesser of $6,575 (the greater of 25% of the debtor's nonpriority unsecured claims of $26,500[8] or $6,575) or $10,950.

Debtor, to avoid dismissal or conversion, asserts that her student loan obligations constitute special circumstances which justify reduction of her monthly income for purpose of

---

[6] 6 *Collier on Bankruptcy* ¶707.05[2][d](Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

[7] Doc. 30. Schedule F lists unsecured nonpriority claims in the amount of $72,405. It appears to the Court that the word "no" was erroneously inserted in the stipulation, which should read "Debtor's nonpriority unsecured claims amounts to more than $26,300." However, this apparent error is of no consequence in this case.

[8] If the Court used the figure of $72,405 as the total nonpriority unsecured debts, the result would be the same. Twenty-five percent of $72,405 is $18,101.25.

4

the abuse test. The UST agrees that if Debtor's student loan payment obligation is subtracted from her Form 22A current monthly income, the result is $91.09, 60 times which is $5,465.40, which is less than either $6,575 or $10,950. In other words, the UST and Debtor agree that if her student loan payments may be subtracted from her current monthly income for the purpose of applying the test for the presumption of abuse, Debtor's filing will not be presumed to be abusive. To determine if the UST is entitled to rely upon the presumption of abuse the Court must therefore answer the question whether the Debtor's student loan payments are a special circumstance. Based upon the legal arguments presented and because the parties have submitted the issue on stipulated facts which are silent about the student loan details other than the payment amount, the Court understands the parties to be presenting an issue of law - do student loan payments per se constitute special circumstances for the purposes of rebuttal of the presumption of abuse.

The majority of bankruptcy courts addressing the issue have held that payments on a nondischargeable student loan constitute special circumstances, allowing the reduction of current monthly income.[9] Debtor relies primarily upon *Templeton*,[10] where the court concluded that debtors had no reasonable alternative to the payment of the student loans. The nondischargeable student loans could not be consolidated, and debtors were not eligible for deferment. The court found, "[T]here is nothing within the Debtors' power to reduce or otherwise avoid the additional

---

[9] *In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okla. 2007); *In re Haman*, 366 B.R. 307 (Bankr. D. Del. 2007); *In re Delbecq*, 368 B.R. 754 (Bankr. S.D. Ind. 2007); *In re Martin*, 371 B.R. 347 (Bankr. C. D. Ill. 2007); *In re Knight*, 370 B.R. 429 (Bankr. N.D. Ga. 2007); *In re Robinette*, 2007 WL 2955960 (Bankr. D. N.M. 2007).

[10] *In re Templeton*, 365 B.R. at 213.

expense of the student loans."[11] Debtor also cites *Knight*,[12] where the court defined special circumstance as "one that, if debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable economic unfairness prejudicial to the debtor."[13] The well known characteristics of student loans - that the cost of higher education is beyond the means of many without financial assistance, that public policy encourages higher education, that student loans are made available to further that purpose, that many students exit education with high debt payable over periods from 10 to 30 years, and that student loans are excepted from discharge - "render student loan debt unique and qualify it for consideration as a special circumstance because of the likelihood that a debtor may have no reasonable alternative to continuation of the payments in order to avoid unfair economic harm."[14] Debtor also cites without discussion *Delbecq*[15] and *Haman*.[16]

The student loan case on which the UST relies is *Vaccariello*,[17] where the court observed that "funding higher education through the use of student loans is becoming ubiquitous" and stated that "Debtor's obligation to repay their student loans, standing alone, cannot constitute

---

[11] *Id.*, 365 B.R. at 216.

[12] *In re Knight*, 370 B.R. at 429.

[13] *Id.*, 370 B.R. at 437-38.

[14] *Id.*, 370 B.R. at 439.

[15] *In re Delbecq*, 368 B.R. at 754.

[16] *In re Haman*, 366 B.R. at 307.

[17] *In re Vaccariello*, 375 B.R. 809 (Bankr N.D. Ohio 2007).

6

special circumstances."[18] The UST also relies upon *Thompson*,[19] a case where, based upon lack of evidence of the circumstances which had led to the debtor's borrowing, the district court reversed a holding that obligations on a loan from the debtors' 401(k) plan constituted a special circumstance sufficient to rebut the presumption of abuse.

Subsequent to the parties' submissions of their briefs, an additional case, *Pageau*,[20] was decided. It held that payments on a student loan taken out in the ordinary course of debtor's education were not special circumstances of the kind sufficient to rebut the presumption of abuse. The court rejected debtor's contention, like the contention made in this case, that "the mere fact that she is required to make monthly payments . . . on the nondischargeable Student Loan constitutes 'special circumstances.'"[21]

To resolve the difference between the approaches of Debtor and the UST, the Court first examines the statutory language. Finding it ambiguous, the legislative history and the purpose of the special circumstances provision, as well as the interpretation of other courts, are examined.

**B. Legislative History.**

The Code in § 707(b)(2)(B)(i) addresses the special circumstances when the presumption of abuse may be rebutted as follows:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such

---

[18] *Id.*, 375 B.R. at 816.

[19] *Eisen v. Thompson*, 370 B.R. 762 (N.D. Ohio 2007).

[20] *In re Pageau*, __ B.R. __, 2008 WL 482354 (Bankr. D.N.H. 2008).

[21] Id., 2008 WL 482354 at *4.

7

special circumstances that justify additional expenses or
adjustments of current monthly income for which there is no
reasonable alternative.

A debtor seeking to establish special circumstances must comply with the procedural requirements of § 707(b)(2)(B)(ii) and (iii).[22]

The phrase special circumstances is not defined by the Code. The Court finds the phrase ambiguous. For example, it could refer to the circumstances which caused the debtor to incur the expense, to the reasons for debtor's financial circumstances at the time of filing, to the debtor's anticipated financial circumstances, or to the consequences of filing for bankruptcy relief. The Court will therefore consider the purpose of the provision, as reflected in the legislative history,[23] and the decisions of other courts.

The legislative history of BAPCPA establishes that the concept of special circumstances was first introduced to the means test in 1999 in Senate Bill 625.[24] The Senate Judiciary Report

---

[22] The subsections provide:

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

[23] *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) ("Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity...."); *In re Delbecq*, 368 B.R. at 756-58 (examining legislative history of § 707(b)(2)(B)).

[24] *In re Delbecq*, 368 B.R. at 757.

8

on the bill identified a bankruptcy crisis arising from a record number of filings in 1998, following three consecutive years of increased filings even though consumer confidence was high, there was low unemployment, and wages were high. The need for congressional action was found in the "existence of multibillion dollar losses attributable to bankrupts who could repay their debts."[25] The recommended solution was a rebuttable presumption of abuse based upon the means test.

> It is the strong view of the Committee that the bankruptcy code's generous, no-questions-asked policy of providing complete debt forgiveness under chapter 7 without serious consideration of a bankrupt's ability to repay is deeply flawed and encourages a lack of personal responsibility.
>
> S. 625 responds to the bankruptcy crisis by amending section 707(b) of the bankruptcy code to require bankruptcy judges to dismiss a chapter 7 case, or convert a chapter 7 case to chapter 13 if a bankrupt has a demonstrable capacity to repay his or her debts. Under S. 625, a presumption arises that a chapter 7 bankrupt should be dismissed from bankruptcy or converted to chapter 13 if, after taking into account secured debts and priority debts like child support as well as living expenses, the bankrupt can repay 25 percent or more of his or her general unsecured debts, or $15,000, over a 5-year period. The bankrupt can rebut this presumption by demonstrating "special circumstances" which would show that the bankrupt in fact does not have a meaningful ability to repay his or her debts.[26]

The report further states the following regarding "special circumstances:"

> In order to protect debtors from rigid and arbitrary application of a means-test, section 102 also provides that in some cases where the presumption applies the debtor may be able to demonstrate "special circumstances" that justify additional expenses or an

---

[25] S. Rep. 106-49, at 2 (1999) (available at 1999 WL 300934).

[26] S. Rep. 106-49, at 3 (1999).

9

adjustment to the debtor's income. The Committee adopted the "special circumstances" standard, rather than the "extraordinary circumstances" standard included in the Conference Report to accompany H.R. 3150 . . ..

. . . In order to ensure fairness with respect to the consumers who must pay the cost when others discharge debts in bankruptcy, it is essential that the "special circumstances" test establish a significant, meaningful threshold which a debtor must satisfy in order to receive the preferential treatment. The debtor's ability to overcome the presumption of abuse must be based solely on financial considerations (i.e., adjustments to income or expenses required by special circumstances) and not on factors unrelated to a chapter 7 debtor's ability to repay his or her debts. . . . In addition, special circumstances adjustments must not be used as a convenient way for debtors to choose a more expensive lifestyle. The special circumstances provision must be reserved only for those debtors whose special circumstances require adjustments to income or expenses that place them in dire need of chapter 7 relief.

\* \* \*

The new section 707(b) thus contains a tightly-focused mechanism for identifying bankrupts who have repayment capacity and sorting them out of chapter 7. At the same time, the new section 707(b) contains numerous procedural safeguards in order to ensure that the individual circumstances of each bankrupt will be considered before he or she is dismissed or converted to chapter 13. [27]

The statutory examples of special circumstances, medical expenses and active service in the military, were added in 2005 by a special amendment offered by Senator Sessions.[28] That amendment clarified that "the special circumstances exception to the bill's needs-based test includes a debtor with a serious medical condition or a debtor on active duty in the military to the extent these factors justify adjustment to income or expenses. . . ."[29] "According to Senator

---

[27] S. Rep. 106-49, at 6-8 (1999).

[28] *In re Delbecq*, 368 B.R. at 758; *In re Haman*, 365 B.R. at 314.

[29] H. R Rep. 109-31, pt 1, at 9 (2005) (available at 2005 WL 832198).

10

Sessions, the intent behind the examples was not to limit judicial discretion or to provide a definition of special circumstances, but rather, to ensure that 'those incapable of paying back their debt due to military service or a serious medical condition may not be required to do so.'" [30]

From the foregoing, the Court determines that the presumption of abuse test was adopted to cure the perceived problem of debtors electing to file under Chapter 7 when they had the ability to pay a meaningful portion of their unsecured nonpriority debt based upon their current monthly income calculated using the objective criteria of the means test. The focus of the special circumstances factor is financial conditions which justify including additional expenses or reducing income. The burden to establish special circumstances was not set particularly high, making the presumption truly rebuttable. The standard for amendment is special, not extraordinary, circumstances. The procedural requirements impose the condition that the adjustments to income or expenses be shown by affidavit to be reasonable and necessary. The medical expenses and military service circumstances referred to in the statute are mere examples of circumstances where the results of the means test, based primarily on IRS national and local standards, may not accurately demonstrate ability to repay. The statutory requirement that there be no reasonable alternative is linked to the concern that the special circumstances rebuttal not be used as a convenient way for Chapter 7 debtors to select a more expensive life style. The question is whether, given the individual debtor's circumstances, the presumption of abuse has erroneously identified a debtor as having ability to pay a meaningful portion of his or her unsecured debts.

---

[30] *In re Haman*, 366 B.R. at 314.

**C. Case Law Defining Special Circumstances.**

The majority, or perhaps all, of the courts considering the matter have held that "whether special circumstance exist is a fact-specific determination that should be made on a case-by-case basis."[31] There is disagreement about the focus of that inquiry. Those cases finding special circumstances focus upon the characteristics of student loans and the resulting economic hardship. Nondischargeability is the overriding factor. For example, in *Templeton*, Debtor's primary authority, the emphasis was upon the nature of student loans payments - the lack of reasonable alternative to the payment of the student loans because the loans are nondischargeable and debtors were not eligible for deferment or consolidation.[32] *Knight*, another case relied upon by Debtor, defined a special circumstance as one which, if not accounted for in the abuse test, would result in "demonstrable economic unfairness prejudicial to the debtor."[33] A student loan debt was found to satisfy this definition because student loan debt has unique characteristics, including nondischargeability, which make it likely that, in order to avoid unfair economic circumstances, a debtor may have no reasonable alternative to continuation of the payments, which would be possible if Chapter 7 was available, [34] In *Delbecq*, the court concluded that because of her nondischargeable student loan, debtor did not have a meaningful

---

[31] *In re Pageau*, 2008 WL 482354 at *3 (citing *In re Robinette*, 2007 WL 2955960 at *4; *In re Turner*, 376 B.R. 370, 378 (Bankr. D.N.H. 2007); *In re Vaccariello*, 375 B.R. at 813; *In re Knight*, 370 B.R. at 437; *In re Pampas*, 369 B.R. 290, 298 (Bankr. M.D. La. 2007); *In re Templeton*, 365 B.R. at 216).

[32] *In re Templeton*, 365 B.R. at 216.

[33] *In re Knight*, 370 B.R. at 438-439.

[34] *Id.*, 370 B.R. at 439.

ability to repay her other debts either outside of bankruptcy or under Chapter 13.[35] These rationale result in a per se rule that nondischargeable student loan debt which cannot be consolidated or deferred is a special circumstance.

On the other hand, those courts finding student loan debt not to be a special circumstance reject a per se rule based upon Nondischargeability and look to the circumstances under which the debtor incurred the obligation. *Vaccariello*, rejected a per se rule as follows:

> This Court is not persuaded that merely because a debt is not dischargeable it can or should constitute a special circumstance. If Congress had wanted to make any or all of the exceptions to discharge a special circumstance, it could have chosen to do so. It did not. This Court does not find any basis in the Bankruptcy Code or case law to support a *per se* rule that having no reasonable alternative to paying a nondischargeable debt constitutes special circumstances. [36]

After having rejected a per se rule, the court found no special circumstances based upon the facts of the case. The Court observed that it cannot be argued that having a student loan is rare or unusual, and debtors had failed to set forth any circumstances to show that their loans had been incurred in other than in the ordinary course of acquiring their educations. The *Pageau*[37] court also refused to focus upon the nature of the student loan. It stated:

> It is not the obligation to repay a loan itself that qualifies such an expense as a special circumstance under § 707(b)(2)(B)(i), but rather it is the circumstances that lead to incurring a loan that must be special and justify the inclusion of this additional expense item in the means test, as long as the debtor has no reasonable

---

[35] *In re Delbecq*, 368 B.R. at 761.

[36] *In re Vaccariello*, 375 B.R. at 815.

[37] *In re Pageau*, 2008 WL 482354.

13

alternative but to make monthly payments on such loan. For that reason, the Court shall focus on the reasons the Debtor borrowed money for her education and incurred the Student Loan debt.[38]

Under this test, nondischargeability cannot be a special circumstance.[39] Further, loans incurred to secure a "more advantageous income or to enter a different vocation are not special circumstances," as they are neither extraordinary nor rare.[40]

**D. The Court Concludes that Student Loan Expenses do not per se Constitute Special Circumstances.**

Debtor is asking the Court to hold that all student loan debts not subject to deferment, without more, satisfy the special circumstances standard. This the Court declines to do. The Court is not prepared to join the analysis of the Oklahoma Bankruptcy Court in *Templeton* and finds the analysis of *Pageau* much more persuasive. If Congress intended to allow inclusion of all student loan expenses when calculating disposable income for purposes of the means test, it would have said so. The validity of this observation is supported by the fact that the IRS Manual, which is the source of many of the expenses permitted under the means test, allows the student loan expense under the category of all necessary expenses, but Congress when enumerating the expenses allowable under the means test by virtue of its exclusion of all "payments for debts" did not include payment for student loan debts in § 707(b)(2)(A)(ii)(I).[41] It is tempting for the Court to find that student loan debt is "good" nondischargeable debt, as

---

[38] *Id.*, 2008 WL 482354 *5 (citation omitted).

[39] *Id.*, 2008 WL 482354 *6.

[40] *Id.*, 2008 WL 482354 *5.

[41] *See In re Knight*, 370 B.R. at 436-37.

14

contrasted with "bad" nondischargeable debt, such as that arising from fraud, for example, and to hold that "good" nondischargeable debt constitutes a special circumstance. However, as the *Pageau* court observed, "there is no suggestion in Section 707(b)(2)(B) that courts have been delegated [this] policy decision."[42]

This Court agrees with the numerous courts which have concluded that whether special circumstances are present is a factual determination made on a case-by-case basis.[43] The circumstances which gave rise to the loan are an important, if not the determinative, factor. Most student loans are incurred in the ordinary course to enhance earning potential or to change to a more desirable field of endeavor. It will be an unusual case where the circumstances of a student loan creates a financial condition which justifies the inclusion of this expense in the means test. It is the nondischargeability of student loans which cause a debtor to be faced with unsatisfactory alternatives, but the flexibility of the special circumstances rebuttal of the presumption of abuse does not have as its purpose the mitigation of economic hardship resulting from nondischargeability. Its purpose is to allow debtors to rebut the presumption of abuse by demonstrating the absence of meaningful ability to repay unsecured debt because of special circumstances which increase expenses above those permitted by the statutory means test. That test seeks to determine whether debtors are seeking Chapter 7 relief when they have sufficient income to make meaningful payments to unsecured creditors, not to be a gate keeper to protect debtors from the adverse consequences of nondischargeable student loan debt, in a Chapter 13 case or otherwise.

---

[42] *In re Pageau*, 2008 WL 482354 *6.

[43] *See Id.*, 2008 WL 482354 *3 (collecting cases).

The UST presents four specific arguments in opposition to Debtor's position that her student loan payments constitute special circumstances. Although the Court denies Debtor's claim of special circumstances for the reasons stated above, response to the UST's arguments will clarify the Court's position. The first three of these are offered in support of the legal proposition that student loan payments can never constitute an additional expense justified by special circumstances, a proposition not presented to the Court for decision and with which it does not agree. First, the UST contends that "Debtor has a reasonable alternative, chapter 13." The Court rejects this argument. Based upon case law and the legislative history, the Court finds the possibility of a Chapter 13 filing not to be a relevant consideration. One court has concluded that consideration of how a debtor could proceed under Chapter 13 as a part of the special circumstances analysis "would violate the Congressional intent behind the means test."[44] This Court agrees. The means test is based upon the debtor's income and expenses, and it is the result of the means test that determines the presumption of abuse. It is a snapshot of debtor's financial condition on the date of filing. To consider a hypothetical Chapter 13 plan would require the Court to stray from the means test, and consider debtor's projected disposable income and obligations.[45] This Court has concluded the requirement that the debtor not have a reasonable alternative serves primarily to foreclose the allowance of additional expenses which result from debtor's selection of a high standard of living. The means test demands "that a debtor commit discretionary income to pay debts rather than to maintain an existing life style."[46] That purpose

---

[44] *In re Haman*, 366 B.R. at 315.

[45] *In re Pageau*, 2008 WL 482354 *7.

[46] *In re Knight*, 370 B.R. at 439.

16

of the condition is illustrated by *Delunas*,[47] where the court disallowed as a special circumstance additional housing expense of $813 per month to fulfil debtors' desire to live in a four bedroom house in an affluent St. Louis suburb where their children would have separate bedrooms and would be bused to the school where they had been enrolled. The decision whether to file under Chapter 7 or Chapter 13 is not a life style choice. The presence or absence of a reasonable alternative is not evaluated by the potential results of a hypothetical Chapter 13 filing.

Second, the UST argues that certain of the cases finding student loan obligations constitute special circumstances are either distinguishable or wrongly decided. The primary basis for this position is that *Haman*, *Templeton*, and *Delbecq*, cited by Debtor, relied in part on *In re Thompson*,[48] which held that a 401(k) loan payment came within the definition of special circumstances. *Thompson* was reversed on appeal.[49] It was a 401(k) case, not a student loan case, so the reliance on *Thompson* by the courts in the cases cited by Debtor was limited. *Haman* cited *Thompson* when observing that it is open to question whether the two statutory examples of special circumstances arise involuntarily.[50] *Templeton*[51] and *Delbecq*[52] cited *Thompson* for the general proposition that special circumstances inquiry is fact-specific. The district court, when reversing the bankruptcy court's finding of special circumstances, actually

---

[47] *In re Delunas*, 2007 WL 737763 (Bankr. E.D. Mo. 2007).

[48] *In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006).

[49] *Eisen v. Thompson*, 370 B.R. at 762.

[50] *In re Haman*, 366 B.R. at 313.

[51] *In re Templeton*, 365 B.R. at 216.

[52] *In re Delbecq*, 368 B.R. at 758.

17

relied upon the lower court's conclusion that "the language of the 'special circumstances' provision implies fact-specific circumstances."[53] When finding the student loan satisfied the definition of special circumstances, the *Templeton* court relied upon *In re Lenton*,[54] in addition to *Thompson*.[55] Hence, the reversal of *Thompson* does not cast serious doubt on the cases cited by Debtor.

Third, the UST asserts that the circumstances of student loan payments do not rise to the level of the two circumstances enumerated in the statute, military service and a serious medical condition. The UST argues that these examples provide clear guidance that the circumstances that qualify as special should be beyond the control of the debtor and immutably impact the debtor's monthly expenses and/or ability to generate income. The Court disagrees. The legislative history indicates the two statutory circumstances are mere examples to assure protection of debtors in the referenced categories from a finding of abuse when, despite the mechanics of the means test, they lack disposable income for the payment of unsecured creditors. "[T]he legislative history does not indicate that the explicit examples included in § 707(b)(2)(B) were intended to define, qualify or otherwise limit the meaning of 'special circumstances.'"[56] The purpose of the means test and the presumption of abuse is to "require bankruptcy judges to dismiss a chapter 7 case, or convert a chapter 7 case to chapter 13 if a

---

[53] *Eisen v. Thompson*, 370 B.R. at 772, *quoting In re Thompson*, 350 B.R. at 777.

[54] *In re Lenton*, 358 B.R. 651, 661-62 (Bankr. E.D. Pa. 2006).

[55] *In re Templeton*, 365 B.R. at 216-17.

[56] *In re Delbecq*, 368 B.R. at 758.

18

bankrupt has a demonstrable capacity to repay his or her debts."[57] In recognition that the mechanical test reflected in Form 22A could sweep too broadly, Congress enacted the special circumstances exception whereby the court may allow additional expenses, where the debtor has no reasonable alternative. The Court is not willing to state that student loan payments are so dissimilar to military service and serious medical conditions that such payment will never qualify as special circumstances.

Fourth, the UST argues that Debtor has not satisfied the procedural requirements of § 707(b)(2)(B)(ii) and (iii), quoted in footnote 21 above. The Court agrees the record is deficient in this regard, but finds the UST disingenuous when raising this issue after having agreed to submit the case on stipulated facts. The issue before the Court is the legal question of whether student loan payments per se qualify as a special circumstance within the meaning of § 707 (b)(2)(B). Satisfaction of the procedural requirements is not relevant.

**CONCLUSION.**

For the foregoing reason, the Court finds that Debtor's student loan expenses, standing alone, do not satisfy the special circumstances standard of § 707(b)(2)(B) for justifying additional expenses for the purpose of rebutting the presumption of abuse. The UST's motion to dismiss or convert pursuant to § 707(b)(1) is granted. Debtor's case shall be dismissed, unless within 30 days of this order, Debtor converts to a Chapter 13.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal

---

[57] S. Rep. 106-49, at 3 (1999).

Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###